UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

OLUKAYODE DAVID OJO,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                            16-CV-4112 (MKB) (LB)

            v.

THE UNITED STATES OF AMERICA, MDC
LIEUTENANT FRANK MALDONADO, ERIC
ABDELLAH, STEDMAN FERGUSON,
CLARENCE ROSS, JOHN DOES #1–4, and JANE
DOE #1,

                              Defendants.
--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Olukayode David Ojo, proceeding *pro se*, commenced the above-captioned

action on July 25, 2016, against Defendants the United States of America and Metropolitan

Detention Center ("MDC") correctional officers Frank Maldonado, Eric Abdellah, Stedman

Ferguson, Clarence Ross, Veronica Metzger, and John Does #1–4 (collectively, the "Officer

Defendants"). (Compl., Docket Entry No. 1.) Plaintiff asserts various claims against the United

States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA"). (Am.

Compl. ¶¶ 120–82, Docket Entry No. 26.) Plaintiff also asserts a number of claims against the

Officer Defendants, and seeks relief pursuant to *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.* ¶¶ 183–245.)

On September 21, 2018, Defendants filed a motion to dismiss or, in the alternative, for

summary judgment. (Defs. Mot. to Dismiss or for Summ. J. ("Defs. Mot."), Docket Entry No.

59.) On April 8, 2019, the Court referred Defendants' motion to Magistrate Judge Lois Bloom

for a report and recommendation. (Order dated Apr. 8, 2019.) By report and recommendation

dated August 15, 2019, Judge Bloom recommended that the Court dismiss the Amended

Complaint for lack of subject matter jurisdiction and failure to state a claim (the "R&R"). (R&R,

Docket Entry No. 75.) Plaintiff timely filed objections, and Defendants have responded.[1] (Pl.

Obj. to the R&R ("Pl. Obj."), Docket Entry No. 80; Defs. Opp'n to Pl. Obj. ("Defs. Opp'n"),

Docket Entry No. 84.)

For the reasons set forth below, the Court adopts the R&R in its entirety and grants

Defendants' motion to dismiss.[2]

### I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes

of this Memorandum and Order.

Plaintiff's claims arise in connection with his incarceration at the MDC, a federal

detention center operated by the Federal Bureau of Prisons ("BOP") in Brooklyn, New York,

where he was serving a thirty-seven-month sentence imposed on February 27, 2014 by a federal

district judge in the Eastern District of New York. (Am. Compl. ¶¶ 26, 48.) Plaintiff alleges that

he was eligible for good conduct time ("GCT") credit based on his compliance with disciplinary

---

[1] On August 30, 2019, the Court granted Plaintiff's request for an extension of time to
file objections to the R&R and directed the parties to file any objections on or before September
20, 2019. (Order dated Aug. 30, 2019.) By Order dated September 23, 2019 (the "September
23, 2019 Order"), the Court adopted the then-unopposed R&R in its entirety and dismissed the
Amended Complaint. (Sept. 23, 2019 Order, Docket Entry No. 77.) By letter dated September
20, 2019, but received by the Pro Se Office and filed on September 30, 2019, Plaintiff requested
a second extension to file objections to the R&R. (Letter dated Sept. 20, 2019, Docket Entry No.
79.) The Court granted the request for an extension and directed Plaintiff to file any objections
to the R&R on or before October 10, 2019. (Order dated Oct. 3, 2019.) By Order dated October
29, 2019, the Court vacated the September 23, 2019 Order, as well as the Clerk's Judgment
entered on September 25, 2019, dismissing the Amended Complaint. (Order dated Oct. 29,
2019.)

[2] Because the Court grants Defendants' motion to dismiss, the Court does not consider
Defendants' motion for summary judgment.

regulations, and that, based on his GCT credit, he should have completed his sentence by Saturday, March 1, 2014. (*Id.* ¶¶ 50, 58.) Plaintiff further alleges that, because of the "BOP policy for weekend release purposes," he should have been released on Friday, February 28, 2014, but the BOP employees who "did the calculation of [Plaintiff's] release date made a serious error in the release date calculation" and "wrongfully set an untimely [release] date of Saturday, March 15, 2014." (*Id.* ¶¶ 58, 61.)

On March 14, 2014, at around 8:00 AM, Plaintiff lost access to his Trust Fund Limited Inmate Computer System ("TRULINCS") account, (*id.* ¶ 67), by which time Plaintiff alleges "BOP . . . had administratively released and/or passed [a] message for the release of [Plaintiff] to the MDC," (*id.* ¶ 68). At around the same time, John Doe #1, a correctional officer, informed Plaintiff that "he had been set free to go home," and told him to "'pack up' his properties and leave." (*Id.* ¶¶ 69–70.) Following John Doe #1's instructions, Plaintiff "packed up" his cell, brought his sheets and prison uniforms to the laundry room, and got dressed in "his own personal clothes that he bought from commissary." (*Id.* ¶¶ 71–74.) Once Plaintiff was ready to leave his unit, John Doe #1 "suddenly insisted that [Plaintiff] should go and put on the prison uniform," and prevented Plaintiff from leaving the unit. (*Id.* ¶¶ 75–77.) John Doe #1 then called two additional correctional officers, Metzger and John Doe #2, to the scene, who also told Plaintiff to put his prison uniform back on and prevented Plaintiff from leaving the unit. (*Id.* ¶¶ 78–81.) Plaintiff went to the laundry room to get his uniform but it was already in the washing machine. (*Id.* ¶ 82.) Metzger and John Doe #2 then instructed him to "borrow a prison uniform from another inmate," which Plaintiff attempted to do but was unsuccessful. (*Id.* ¶¶ 84–87.)

Plaintiff alleges that John Does #1 and #2 and Metzger then "conspired together, spoke and gave [a] sign to each other and suddenly invited some other colleagues in the facility" to the

unit, at which point Maldonado, Abdellah, Ferguson, Ross, and John Doe #3 appeared in the unit. (*Id.* ¶¶ 90–91.) John Doe #1 pointed at Plaintiff and "said that was the guy," and then Abdellah, Ferguson, Ross, and John Doe #3 "approached" Plaintiff, "forcibly snatched" his radio, and "directed him to a dark spot around the exit" of the unit. (*Id.* ¶¶ 92–94.) While in the "dark spot," two of the officers "forcibly and excessively twisted [Plaintiff's] hands backward and forcibly placed handcuffs on his wrists." (*Id.* ¶ 95.) The handcuffs "were excessively tightened," causing Plaintiff "discomfort," but when Plaintiff "complain[ed] of pain[]" from the "excessive tightness of the handcuffs," Abdellah, Ferguson, Ross, and John Doe #3 "mock[ed]" him. (*Id.* ¶¶ 96–97.)

Abdellah, Ferguson, Ross, and John Doe #3 then brought Plaintiff to the Segregated Housing Unit (the "SHU"), while "shower[ing] [Plaintiff with] physical and verbal abuse," where Plaintiff was "locked in [a] single cell without [a] seat, bed, toilet and/or water," and that was "very cold." (*Id.* ¶¶ 98–100.) Another officer, John Doe #8, then arrived at the cell where Plaintiff was being held and "directed [Plaintiff] to remove his clothes," which John Doe #8 then took. (*Id.* ¶ 101.) John Doe #8 "directed [Plaintiff] to squat, raise his arms, and open his mouth . . . searching [Plaintiff]." (*Id.* ¶ 102.) Plaintiff was "left naked . . . for a substantial period of time" before John Doe #8 returned and gave Plaintiff an orange uniform, designated for inmates who have committed disciplinary infractions. (*Id.* ¶¶ 103, 106.) While Plaintiff was left naked in the cell, he could be seen by "male and female officers that passed by . . . caus[ing] [Plaintiff] embarrassment[] and emotional trauma." (*Id.* ¶ 104.)

At around 11:00 AM, Plaintiff was taken out of the cell, brought to the "booking section" of MDC, and eventually released to two of the Officer Defendants. (*Id.* ¶¶ 107–08.) Plaintiff contends that "because of the correctional officers' retaliatory intent," he did not receive his

property, "including legal documents, a big expensive Bible, reading lamp and some items from commissary." (*Id.* ¶¶ 109–11.)

On July 20, 2015, Plaintiff filed an administrative claim with BOP (the "July 2015 Claim"), alleging, *inter alia*, that he had been detained in the MDC SHU for three hours past his approved release time of 8:00 AM on March 14, 2014, where he had been left naked for a substantial period of time, and that some of his property was not returned to him. (July 2015 Claim 33–39, annexed to Am. Compl., Docket Entry No. 26.)[3] On May 8, 2018, Plaintiff filed another administrative claim with BOP (the "May 2018 Claim"), alleging that based on his GCT credit, his federal prison sentence should have ended on February 27, 2014, and that instead he was detained unlawfully at MDC until March 14, 2014. (May 2018 Claim 39–40, annexed to Pl. Opp'n to Def. Mot. ("Pl. Opp'n"), Docket Entry No. 55.)

Plaintiff alleges that he "did not violate any rule or regulation . . . that could justify his arrest, assault, battery, detention and/or punishment," and was never charged with any "crime, infraction, or violation . . . before, during [or] after the incident." (*Id.* ¶¶ 112–13.) Plaintiff further alleges that Maldonado, Abdellah, Ferguson, Ross, John Does #1–4, and Metzger "became aware of approximately [ninety] pages [of] previous grievances and/or a civil rights action filed by [Plaintiff] against[]other correctional officers and the facility's dentist," and that the Officer Defendants' actions were "maliciously motivated and . . . taken in furtherance of their conspiracy to retaliate against [Plaintiff]." (*Id.* ¶ 114.)

Plaintiff asserts claims under the FTCA against the United States for false imprisonment, false arrest, assault, battery, intentional and negligent infliction of emotional distress, and

---

[3] Because the Amended Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

negligence. (*Id.* ¶¶ 120–82.) In addition, Plaintiff asserts claims for relief pursuant to *Bivens* against the Officer Defendants for false arrest, false imprisonment, assault, battery, and failure to intervene, as well as violations of Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments. (*Id.* ¶¶ 183–245.) Plaintiff alleges that as a result of Defendants' actions, he has experienced "pain and suffering, mental anguish . . . embarrassment, humiliation, loss of enjoyment . . . damage to his mental state and other intangible damages," and that he has incurred and will continue to incur medical expenses. (*Id.* ¶ 119.) Plaintiff seeks money damages and declaratory relief. (*Id.* at 29.)

## II. Report and recommendation

Judge Bloom recommended that the Court grant Defendants' motion to dismiss the Amended Complaint. (*See generally* R&R.)

### a. FTCA claims

#### i. Fourteen-day delay in release from MDC

Judge Bloom recommended that the Court dismiss Plaintiff's FTCA claim for false imprisonment arising out of the alleged fourteen-day delay in his release from MDC because Plaintiff failed to exhaust his claim and the claim is time-barred. (*Id.* at 8–9.) Judge Bloom found that Plaintiff's May 2018 Claim alleging a fourteen-day delay in release was untimely and that the July 2015 Claim "made no mention of a [fourteen]-day delay." (*Id.* at 8.) Because Plaintiff's claim accrued on March 14, 2014, the day he was actually released, "the two-year statute of limitations for an FTCA claim expired on or about March 14, 2016," (*id.* at 9), and Plaintiff did not file this action until July 25, 2016. Judge Bloom rejected Plaintiff's invocation of the discovery rule of accrual, finding that the Amended Complaint "makes clear that [Plaintiff] was aware that he had GCT, that he had calculated his GCT and that he expected to be

released on February 28, 2014." (*Id.*)

### ii. BOP's calculation of Plaintiff's release date

Judge Bloom recommended that the Court dismiss Plaintiff's negligence claims brought

in connection with BOP's allegedly erroneous calculation of Plaintiff's release date.

Judge Bloom found Plaintiff's claim that BOP failed to exercise due care in calculating

his release date time-barred for the same reason she found his false imprisonment claim time-

barred. (*Id.* at 9–10.) In addition, she concluded that, even if the claim were not time-barred,

Plaintiff "has failed to demonstrate that New York law recognizes a cause of action for the

specific conduct alleged," and that while "there may be a private analogue for a failure to act

claim, that private analogue does not fit [P]laintiff's allegations here." (*Id.* at 10–11.)

Judge Bloom also recommended that the Court dismiss Plaintiff's negligent investigation

claim because "New York law does not recognize a cause of action for negligent investigation"

and therefore the claim lacks a private analogue. (*Id.* at 11.)

### iii. Three-hour detention in the SHU

Judge Bloom recommended that the Court dismiss Plaintiff's claim for false arrest/false

imprisonment in connection with his three-hour detention in the SHU. (*Id.* at 14.) She found

that Plaintiff had not plausibly alleged a false imprisonment claim under New York law, as

Plaintiff "was in BOP custody pursuant to a judgment of a federal court" and therefore his

detention was privileged. (*Id.* at 13.) Judge Bloom reasoned that, even accepting as true

Plaintiff's allegations that his release had been authorized as of 8:00 AM on March 14, 2014, the

"judgment did not specify the time of day [Plaintiff] was to be released" and no "statute

mandate[s] the exact time BOP must release a prisoner." (*Id.*) In addition, "[e]ven if BOP had

approved [P]laintiff's release at 8:00 [AM] and then failed to honor that approval" by instead

releasing him at 11:00 AM, the "BOP has broad discretion to determine the terms of an inmate's incarceration." (*Id.*) Finally, Judge Bloom recommended that, even if Plaintiff's claim were liberally construed as a claim for wrongful confinement, the Court should still dismiss the claim because there is no private analogue for wrongful confinement and thus the Court would lack subject matter jurisdiction over such a claim. (*Id.* at 14.)

### iv. Remaining negligence claims

Judge Bloom recommended that the Court dismiss Plaintiff's remaining negligence claims because they either are barred by the discretionary function exception to the FTCA or lack a private analogue. (*Id.*)

First, as to Plaintiff's claims that BOP failed to adequately train and supervise personnel and created and/or sanctioned discriminatory policies, Judge Bloom reasoned that "[t]raining and supervising BOP personnel is inherently discretionary and involves matters of public policy," and that pursuant to 18 U.S.C. § 4042(a), BOP officials are given "great discretion to administer their duties as they see fit." (*Id.* at 15–16.) Judge Bloom concluded that the judgment or choice at issue was "grounded in considerations of public policy or susceptible to policy analysis," and thus found Plaintiff's claims to be precluded by the discretionary function exception. (*Id.* at 16–17 (quoting *USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namibia*, 681 F.3d 103, 112 (2d Cir. 2012)).)

Second, as to Plaintiff's claims for negligent and intentional infliction of emotional distress, Judge Bloom noted, as an initial matter, that neither of these torts are an explicit exception to the federal government's waiver of sovereign immunity under the FTCA, and thus may not be covered by the waiver. (*Id.* at 17.) Judge Bloom found it was not necessary for the Court to address the issue, however, because such claims are barred regardless by the

discretionary function exception.[4] (*Id.*) Judge Bloom concluded that Plaintiff's claims, which arise in connection with his three-hour detention in the SHU, implicate a decision that was "inherently within the BOP's discretion." (*Id.* at 18.) In addition, Judge Bloom found that Plaintiff's "allegations do not meet the stringent requirements of New York tort law," and thus further recommended that the Court dismiss Plaintiff's claim for "fail[ing] to allege conduct that is sufficiently 'extreme and outrageous.'" (*Id.* at 18–19.)

Third, Judge Bloom recommended that the Court dismiss Plaintiff's negligent investigation claims because there is no private analogue. (*Id.* at 11.)

### v.   **Plaintiff's excessive handcuffing claim**

Judge Bloom recommended that the Court dismiss Plaintiff's claims for assault and battery for failure to allege sufficient facts to state a claim. (*Id.* at 20.) Noting that "there is consensus in the Second Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort," Judge Bloom concluded that Plaintiff "does not allege any specific injury related to his excessively tight handcuffing claim," and thus fails to state a claim. (*Id.* at 21.)

### b.   *Bivens* **claims**

Judge Bloom recommended that the Court dismiss all of Plaintiff's *Bivens* claims because there is no *Bivens* remedy available for these claims. (*Id.* at 30.) Noting that "the Supreme Court [has] made clear that courts should not imply rights and remedies under *Bivens* beyond the three contexts already recognized," (*id.* at 23 (citing *Ziglar v. Abbasi*, 582 U.S. ---, 137 S. Ct. 1843 (June 19, 2017))), Judge Bloom found that all of Plaintiff's claims against the Officer

---

[4] Judge Bloom noted that while Defendants do not raise the discretionary function exception with respect to these claims, the Court should address the issue *sua sponte* because it implicates the Court's subject matter jurisdiction. (R&R 17.)

Defendants, which she construed to allege violations of his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, present new *Bivens* contexts, (*id.* at 23–29). In addition, Judge Bloom found that even if Plaintiff's claims did not present new *Bivens* contexts, the Court should still dismiss them for failure to plausibly allege facts sufficient to state a claim. (*Id.* at 25–29.) Finally, Judge Bloom found that special factors counselled against judicially-created damages remedies for Plaintiff's claims. (*Id.* at 29–30.)

### c. Leave to amend

Judge Bloom recommended that the Court decline to grant Plaintiff leave to file a second amended complaint, because Plaintiff "has already amended his complaint once," and any amendment would be futile because "the Court would lack subject matter jurisdiction or [P]laintiff's claims would be subject to dismissal for failure to state a claim." (*Id.* at 31 n.9.)

## III. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only

conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). "[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). As a result, courts may also "refer[] to evidence outside the pleadings" to evaluate subject matter jurisdiction. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of

proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018).

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the

court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Objections to the R&R

Plaintiff objects to a number of Judge Bloom's recommendations. (*See generally* Pl. Obj.)

### i. False arrest and false imprisonment claims

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss Plaintiff's FTCA claim for false imprisonment in connection with the alleged fourteen-day delay in his release because Plaintiff failed to exhaust his administrative claim. (*Id.* at 8.) Plaintiff argues that an "[a]dministrative claim may be amended at any time prior to final agency action, i.e. denial, final offer of settlement, even after [the] two-year [statute of limitations] has run," and that "Plaintiff amended his administrative claims on or about May 8, 2018." (*Id.*) Plaintiff argues that because there has been "no final decision on the administrative claim . . . Plaintiff timely amended his . . . claim." (*Id.* at 5.) Plaintiff further objects to Judge Bloom's "conclu[sion] that Plaintiff was aware of his [fourteen]-day over[-]detention prior to his release on March 14, 2014," which Plaintiff contends misconstrued the allegations in the Amended Complaint, and to her finding that he was not entitled to invoke the discovery rule of accrual. (*Id.* at 5–6.) Plaintiff asserts that he "discovered the fact that he actually suffered [a fourteen]-day over[-]detention" after reviewing a report by the Office of the Inspector General ("OIG"), detailing BOP's untimely release of federal inmates (the "OIG Report"), which he found in approximately December of 2016 while preparing to respond to Defendants' then-anticipated motion to dismiss in this case. (*Id.* at 5.) Plaintiff argues that "[i]t is obvious from the OIG report that the BOP repeatedly detained several thousands of people beyond the judgment of their sentences." (*Id.* at 6.)

Plaintiff also objects to Judge Bloom's recommendation that the Court dismiss Plaintiff's FTCA claim for false arrest/false imprisonment in connection with his three-hour detention in the SHU, and to her finding that his detention was privileged. (*Id.* at 8.) Plaintiff argues that the court judgment pursuant to which Plaintiff was being held in BOP custody had already "expired" at the time of his alleged detention and "BOP headquarters . . . had already authorized [Plaintiff's] release . . . at approximately 8:00 [AM]." (*Id.* at 9.)

### ii. Negligent and intentional infliction of emotional distress claims

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss Plaintiff's FTCA claims for negligent and intentional infliction of emotional distress in connection with his three-hour detention in the SHU. (*Id.* at 9.) Plaintiff argues that the federal court's "judgment had already expired" and that his being "strip[ped] naked for several hours did not serve any purpose [other] than to punish Plaintiff based on impermissible reasons, because he used [the grievance] system." (*Id.*) Plaintiff contends that he has plausibly alleged a claim for intentional infliction of emotional distress because "any sane person under the same circumstances . . . would be emotionally traumatized." (*Id.* at 10.)

### iii. Negligence claims

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss Plaintiff's FTCA claim that BOP failed to exercise due care in calculating his release date.[5] (*Id.* at 10.) Plaintiff argues that, "under New York law, state officials maintain a duty of care to protect inmates and other individuals in their custody from reasonably foreseeable risks of harm," and

---

[5] While Plaintiff argues that Judge Bloom "erroneous[ly] conclu[ded] that New York does not recognize failure to act negligence claims," (Pl. Obj. 10), Judge Bloom in fact found that "while there may be a private analogue [under New York law] for a failure to act claim, that private analogue does not fit [P]laintiff's allegations here," (R&R 10).

thus Plaintiff's claim against the United States is cognizable under the FTCA. (*Id.* at 10–11.)

### iv. Leave to amend

Plaintiff objects to Judge Bloom's recommendation that the Court deny Plaintiff leave to file a second amended complaint. (*Id.* at 8.) Plaintiff argues that the proposed second amended complaint, attached to his objections to the R&R, "cure[s] the exhaustion issues," as well as the other grounds for dismissal "because it clearly establishe[s] that . . . [Plaintiff's] judgment of sentence had expired prior to the time of the [alleged] incidents." (*Id.*)

### c. Unopposed portions of and conclusory objections to the R&R

Plaintiff does not object to Judge Bloom's recommendation that the Court dismiss Plaintiff's negligent investigation claim. Plaintiff makes only conclusory objections to Judge Bloom's finding that there is no private analogue for wrongful confinement, (*id.* at 8), and to her recommendation that the Court dismiss his FTCA claims for assault and battery because Plaintiff failed to allege any specific injury in connection with his handcuffing claim, (*id.* at 11).

Plaintiff agrees with and does not oppose Judge Bloom's finding that his First Amendment claim presents a new *Bivens* context. (*Id.* at 8.) While Plaintiff objects to Judge Bloom's findings that the other *Bivens* claims present new *Bivens* contexts, and that special factors counsel hesitation in recognizing *Bivens* remedies, he does not make any further arguments in support of his objections.[6] (*Id.*) To the extent Plaintiff objects to Judge Bloom's

---

[6] Plaintiff objects to Judge Bloom's conclusion that he failed to allege facts regarding the Officer Defendants' individual participation in the alleged conduct that is the basis for his *Bivens* claims for excessive force and failure to intervene, arguing that he "listed every individual [D]efendant[] that [was] involved and present when excessive force was used" in handcuffing Plaintiff. (Pl. Obj. 7.) Judge Bloom made these findings in the context of her recommendation that, "[e]ven if [P]laintiff's excessive force and failure to intervene/failure to protect claim is not considered a new [*Bivens*] context," the Court should still dismiss those claims because "[P]laintiff's allegations are conclusory." (R&R 27.) Since the Court adopts the recommendation to dismiss Plaintiff's *Bivens* claims because there are no *Bivens* remedies

recommendation that the Court dismiss Plaintiff's *Bivens* claims, the Court finds those objections to be conclusory.

The Court reviews these recommendations for clear error. Having reviewed the relevant portions of the R&R and finding no clear error, the Court adopts the recommendations pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's FTCA claims against the United States for negligent investigation, assault, and battery, as well as all of Plaintiff's *Bivens* claims against the Officer Defendants, and dismisses those claims.[7] To the extent that the Amended Complaint can be construed to assert an FTCA claim for wrongful confinement, the Court also dismisses that claim.

### d. FTCA claims

The United States is generally immune from suit. *See United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992))). Under the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees while acting within the scope of their employment." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). "To be actionable under the FTCA, a claim must allege, *inter alia*, that the United States would be liable to the claimant as a private person in accordance with the law of the place where the act or omission occurred." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (alteration and internal quotation marks omitted) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994)). Pursuant to 28

---

available for the Officer Defendants' alleged conduct, the Court does not address whether Plaintiff's allegations in support of his *Bivens* claims are conclusory.

[7] The Court declines to address Defendants' argument that the Officer Defendants are entitled to qualified immunity. (*See* Defs. Mot. 24–28.)

U.S.C. § 2680(h), an exception to this waiver, the government's waiver of sovereign immunity from tort suits "shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). This statutory provision has been referred to as the "intentional tort exception." *See Millbrook v. United States*, 569 U.S. 50, 52 (2013). The intentional tort exception applies not only to claims explicitly based on the torts enumerated within the statutory provision, but any claim "arising out of" such tort, including, for example, "claims . . . that sound in negligence but stem from a battery committed by a Government employee." *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion); *see also Johnson by Johnson v. United States*, 788 F.2d 845, 850 (2d Cir. 1986) (adopting *Shearer*'s plurality view "that the plain language of [section] 2680(h) prohibits claimants from clothing assault and battery actions in the garb of negligence by claiming negligent failure to prevent the attack" (first citing *Lambertson v. United States*, 528 F.2d 441, 445 (2d Cir. 1976); and then citing *Blitz v. Boog*, 328 F.2d 596, 598–99 (2d Cir. 1964))).

However, pursuant to the "law enforcement proviso" of section 2680(h), the FTCA does not bar claims for certain intentional torts when they are committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h). An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* "[T]he law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest."

*Millbrook*, 569 U.S. at 57. The Second Circuit has "recognized that BOP employees . . . qualify [as investigative or law enforcement officers for purposes of § 2680(h)] based on their authority to make arrests under 18 U.S.C. § 3050." *McGowan v. United States*, 825 F.3d 118, 127 n.5 (2d Cir. 2016) (citing *Hernandez v. Lattimore*, 612 F.2d 61, 64 n.7 (2d Cir. 1979)); *see also Walcott v. United States*, No. 13-CV-3303, 2013 WL 5708044, at *3 (E.D.N.Y. Oct. 18, 2013) ("[The functions covered by the proviso are] commonly understood to be traditional law enforcement functions performed by the likes of . . . Bureau of Prisons officers . . . which have broad investigative and law enforcement powers and have been found to fall within the law enforcement proviso." (quoting *Weinraub v. United States*, 927 F. Supp. 2d 258, 262–63 (E.D.N.C. 2012))); *Cuoco v. U.S. Bureau of Prisons*, 2003 WL 22203727, at *4 (S.D.N.Y. Sept. 22, 2003) (applying 28 U.S.C. § 2680(h) where defendants were BOP corrections officers).

### i. False arrest and false imprisonment claims

Plaintiff asserts claims for false arrest and false imprisonment in connection with the alleged fourteen-day delay in his release from MDC and his three-hour detention in the SHU. (Am. Compl. ¶¶ 120–35.)

"Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez*, 939 F.3d at 199 (quoting *McGowan*, 825 F.3d at 126); *see also Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012) ("Under New York law, 'the tort of false arrest is synonymous with that of false imprisonment.'" (quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991))).

### 1. Failure to exhaust

Defendants argue that the Court should dismiss Plaintiff's false arrest/false imprisonment claims as to the alleged fourteen-day delay because Plaintiff "failed to administratively exhaust any such claims as required by the FTCA, and his time to do so has expired." (Def. Mot. 10.)

Plaintiff argues that his claim did not accrue until "early 2017," when he became aware of the OIG Report about BOP's untimely release of inmates, and thus the May 2018 Claim alleging that his release had been delayed by fourteen days was timely. (Pl. Opp'n 8.) Plaintiff also argues that the May 2018 Claim merely amended the timely July 2015 Claim, because that claim was still pending absent a final decision by BOP. (*Id.* at 8–9.)

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see also Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019); *Adeleke v. United States*, 335 F.3d 144, 153 (2d Cir. 2004). The statute requires that:

> the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). A "plaintiff . . . bears the burden of showing that she exhausted her administrative remedies by presenting her claim to the appropriate federal agency before filing suit." *Cooke*, 918 F.3d at 80. "For purposes of . . . [section 2675], a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . written notification of an incident, accompanied by a claim for money damages . . . ." 28 C.F.R. § 14.2(a). "To adequately present a claim to an agency, 'a Notice of Claim must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth. A claim must

be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims.'" *Palmer-Williams v. United States*, 675 F. App'x 70, 70 (2d Cir. 2017) (alteration omitted) (quoting *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998)). "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." *Watson v. United States*, 865 F.3d 123, 130 (2d Cir. 2017) (quoting 28 U.S.C. § 2401(b)). "The date on which an FTCA claim accrues is determined as a matter of federal law." *Barone v. United States of America*, No. 12-CV-4103, 2014 WL 4467780, at *13 (E.D.N.Y. Sept. 10, 2014) (quoting *Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005)). For a claim of false imprisonment, the statute of "[l]imitations begin[s] to run . . . when the alleged false imprisonment ends." *Watson*, 865 F.3d at 131 (first alteration in original) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)); *see also Barone*, 2014 WL 4467780, at *13 ("A claim of false imprisonment accrues under federal law at the earlier of either plaintiff's release or the time his detention first becomes subject to legal process . . . .").

Plaintiff alleges that he was "imprisoned unlawfully from approximately February 28, 2014 to March 14, 2014." (Am. Compl. ¶ 121.) Plaintiff's claim therefore accrued on March 14, 2014, the day the alleged false imprisonment ended, *see Watson*, 865 F.3d at 131, and the day Plaintiff became aware of his injury, *see Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008) ("A claim under the [FTCA] accrues on the date that a plaintiff discovers that he has been injured."). The relevant inquiry is not when Plaintiff became aware that there might be a legal remedy for his injury, but rather when he became aware of his injury. *See Mendez v. United States*, 732 F. Supp. 414, 427 (S.D.N.Y. 1990) ("The law is clear that accrual of a FTCA claim does not await plaintiff's awareness that his injury was negligently inflicted and that

damages may be procured." (citing *United States v. Kubrick*, 444 U.S. 111, 123 (1979))).

Although Plaintiff argues that his claim did not accrue until he learned about the OIG Report, the Court agrees with Defendants that the publication of the OIG Report and Plaintiff's discovery of it does not affect the accrual date of Plaintiff's false imprisonment claim. (*See* Def. Reply in Supp. of Def. Mot. ("Def. Reply") 6, Docket Entry No. 67.) While an FTCA claim's "accrual may be postponed until the plaintiff has or with reasonable discovery should have discovered the critical facts of both his injury and its cause," *Valdez ex rel. Donely*, 518 F.3d at 177 (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)), the bases for Plaintiff's claims — the length of his court-imposed sentence, his conduct while in custody, and the rules for calculating GCT credit — were all known to or should have been known to Plaintiff at the time he was released from MDC custody. Accordingly, Plaintiff's claim for false imprisonment in connection with the alleged fourteen-day delay in his release accrued on March 14, 2014, and the May 2018 Claim, alleging such delay for the first time, was untimely because it was filed more than two years after his claim accrued.

Plaintiff's argument that the May 2018 Claim was a permissible and timely amendment of his earlier administrative claim also fails. Pursuant to 28 C.F.R. § 14.2(c), an administrative claim "may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option [to file an action against the United States] under 28 U.S.C. § 2675(a)." 28 C.F.R. § 14.2(c). Plaintiff commenced this action on July 25, 2016, precluding further amendment of the July 2015 Claim. Accordingly, the May 2018 Claim was not a timely amendment of his previously filed claim, and the Court dismisses Plaintiff's false imprisonment claim for the alleged fourteen-day delay in his release as time-barred. Because Plaintiff did not present his administrative claim within two years of the claim's accrual date, Plaintiff's claim is

"forever barred." *Watson*, 865 F.3d at 130 (quoting 28 U.S.C. § 2401(b)).

## 2. Failure to state a claim

As to Plaintiff's false arrest/false imprisonment claims arising from his three-hour detention in the SHU, Defendants argue that Plaintiff fails to state a claim because he was already confined and his confinement was privileged. (Defs. Mot. 14.) In support, Defendants argue that Plaintiff "was a sentenced federal prisoner who had not yet been released, he already was confined at the MDC, and no new confinement occurred." (*Id.* (citing *McGowan v. United States*, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015)).) Defendants further argue that Plaintiff's detention in the SHU was privileged, because Defendant's sentence ended on March 15, 2014, though he was to be released on March 14, 2014 pursuant to BOP policy, and because BOP was required to hold Plaintiff for up to forty-eight hours beyond his release date because of an Immigration and Customs Enforcement ("ICE") detainer.[8] (*Id.* at 14–15.)

Plaintiff argues that "it is indisputable that [his] release [from BOP custody] . . . had been authorized and approved as [of] at . . . or before 8:00 [AM] o[n] March 14, 2014," and that the authorization of "release was communicated to Plaintiff." (Pl. Opp'n 9.) Plaintiff further argues that his confinement was not privileged because his "judgment of conviction [had] expire[d] as a matter of law on or about February 28, 2014." (Pl. Obj. 6.)

As the Second Circuit has explained, "false imprisonment is characterized by 'detention *without legal process*.'" *Watson*, 865 F.3d at 131 (quoting *Wallace*, 549 U.S. at 389). "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement

---

[8] Defendants cite to their Rule 56.1 Statement filed in support of their summary judgment motion to support their contention that there was an ICE detainer lodged against Plaintiff. (Defs. Mot. 15.) Because the Court considers only Defendants' motion to dismiss and thus looks only at the facts alleged in the Amended Complaint, the Court does not consider the ICE detainer as a justification for Plaintiff's detention past 8:00 AM on March 14, 2014.

is privileged if it stems from a lawful arrest supported by probable cause." *Hernandez*, 939 F.3d at 199. In *McGowan v. United States*, 94 F. Supp. 3d 382, the plaintiff brought a claim for false imprisonment in connection with his detention in the SHU at MDC. *Id.* at 390. The district court found that:

> [p]laintiff's confinement was uncategorically privileged because he was a convicted felon serving his sentence. . . . His custody was the product of a judgment of conviction of a United States District Court that remanded him to the BOP. The judgment did not specify and could not have specified the type of facility in which he would be imprisoned. Upon its entry and until its satisfaction, plaintiff could have no claim for false imprisonment because there was nothing false about it. And it goes without saying that plaintiff's alternative labeling of his claim as "false arrest" does not apply because he was already in custody and thus could not be arrested by the BOP, his custodian.[9]

*Id.* Pursuant to 18 U.S.C. § 3624, "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence . . . ." 18 U.S.C. § 3624(a). "If the date for a prisoner's release falls on a [weekend] . . . the prisoner may be released by the Bureau on the last preceding weekday." *Id.*

Plaintiff was sentenced to thirty-seven months in prison on February 27, 2014 by a federal judge in the Eastern District of New York. (Am. Compl. ¶ 48.) At the time he was sentenced, Plaintiff had been in federal custody since July 11, 2011. (*Id.*) Plaintiff argues that

---

[9] On appeal, the plaintiff in *McGowan* "argue[d] that the district court erred in concluding that his confinement was 'uncategorically privileged' because New York law recognizes a tort of 'wrongful confinement' of an inmate within solitary confinement or keeplock." *McGowan*, 825 F.3d at 126. Because the plaintiff did "not, on appeal, challenge the district court's conclusion as it applies to ordinary claims of false imprisonment, distinct from prisoners' claims of wrongful confinement," the Second Circuit found he had "abandoned such challenge," *id.* at 126 n.4, and instead dismissed plaintiff's wrongful confinement claim because there is no private analogue under New York law, *id.* at 126–27.

"it is indisputable that Plaintiff's release under the custody of BOP had been authorized and approved as [of] at . . . or before 8:00 [AM] o[n] March 14, 2014," and thus his detention in the SHU for approximately three hours was not privileged. (Pl. Opp'n 9.) The Court accepts as true, as it must on a motion to dismiss, Plaintiff's allegations that his release had been administratively approved and that approval communicated to Plaintiff as of 8:00 AM on March 14, 2014. The Court is not aware, however, of any authority suggesting that such administrative approval immediately converts a detention pursuant to a court-imposed sentence from a privileged to an unprivileged detention. Accordingly, the Court finds that Plaintiff fails to state a claim under the FTCA for false arrest/false imprisonment in connection with his alleged three-hour detention in the SHU. To the extent Plaintiff argues that he had finished his sentence as of February 28, 2014, that claim is time-barred, as discussed above.

### ii. Negligent and intentional infliction of emotional distress claims

Plaintiff asserts claims for negligent and intentional infliction of emotional distress in connection with his three-hour detention in the SHU. (Am. Compl. ¶¶ 150–65.) Plaintiff argues that the FTCA "contemplates that victims of the kind of intentional wrongdoing alleged . . . shall have an action . . . against the United States," and that Plaintiff has "clearly alleged intentional and/or negligent conduct" that is "sufficiently . . . outrageous to give rise to an intentional and/or negligent infliction of emotional distress claim[]." (Pl. Opp'n 11.)

Defendants argue that the Court should dismiss Plaintiff's claims because (1) "the intentional tort exception to the FTCA . . . expressly exempt[s] from the law enforcement proviso claims of emotional distress," (Def. Mot. 16), (2) negligent infliction of emotional distress claims are "impliedly subject to the FTCA's intentional tort exception," (*id.*), (3) Plaintiff fails to "allege conduct sufficiently extreme and outrageous to meet the high threshold for [intentional

infliction of emotional distress] under New York law," (*id.* at 17), (4) "conduct which falls

within the scope of another tort . . . is not actionable as [intentional infliction of emotional

distress]," (*id.*), and (5) "New York law bars recovery under general negligence principles on a

[negligent infliction of emotional distress] claim that law enforcement failed to exercise the

appropriate degree of care in effecting an arrest or initiating a prosecution," (*id.* at 18).

"Under New York law . . . a claim for [intentional infliction of emotional distress]

requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a

substantial probability of causing, severe emotional distress; (iii) a causal connection between

the conduct and injury; and (iv) severe emotional distress.'" *Rich v. Fox News Network, LLC*,

939 F.3d 112, 122 (2019) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 702 (1993)).

"New York sets a high threshold for conduct that is 'extreme and outrageous' enough to

constitute [intentional infliction of emotional distress]," requiring that the alleged conduct be "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Coggins*

*v. Cty. of Nassau*, 254 F. Supp. 3d 500, 523 (E.D.N.Y. 2017) (first citing *Bender v. City of New*

*York*, 78 F.3d 787, 790 (2d Cir. 1996); and then quoting *Martin v. Citibank, N.A.*, 762 F.2d 212,

220 (2d Cir. 1985)).

"Under the 'direct duty' theory a plaintiff has a cause of action for negligent infliction of

emotional distress if she suffers an emotional injury from defendant's breach of a duty which

unreasonably endangered her own physical safety." *Mortise v. United States*, 102 F.3d 693, 696

(2d Cir. 1996); *see also Stratakos v. Nassau Cty.*, No. 15-CV-7244, 2019 WL 6699817, at *16

(E.D.N.Y. Dec. 9, 2019) ("The elements of an action for negligent infliction of emotional

distress [under New York law] . . . are a breach of duty owed to the plaintiff which exposes him

or her to an unreasonable risk of bodily injury or death." (alteration and internal quotation marks omitted) (quoting *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016))). "A breach of a duty of care 'resulting directly in emotional harm is compensable even though no physical injury occurred.'" *Cleary v. Wallace Oil Co., Inc.*, 865 N.Y.S.2d 663, 665 (App. Div. 2008) (quoting *Kennedy v. McKesson Co.*, 448 N.E.2d 1332, 1334 (N.Y. 1983)); *see also Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 293 (quoting *Perry v. Valley Cottage Animal Hosp.,* 690 N.Y.S.2d 617, 618 (App. Div. 1999)) ("While physical injury is not a necessary element of a cause of action to recover damages for negligent infliction of emotional distress, such a cause of action must generally be premised upon conduct that unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety.")[10]

Plaintiff has not alleged facts to satisfy the high standard for claims of intentional infliction of emotional distress under New York law. Plaintiff alleges that Defendants "caused [him] to remain incarcerated unlawfully and unnecessarily beyond his expected date and time of

---

[10] The Second Circuit has noted that "New York also recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.'" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (alteration in original) (quoting *Johnson v. State*, 37 N.Y.2d 378, 382 (1975)). However,

> [the] narrow category of cases that requires no physical harm, no fear of harm, and no zone of danger has generally involved cases in which a defendant with a direct relationship and duty to the plaintiff negligently gives a false report of death of a family member or serious illness of the plaintiff, withholds or mutilates the remains of a loved one, thereby preventing a proper and timely burial, breaches a medical duty of care to the plaintiff-patient directly requiring the patient to make an extremely emotionally distressing decision against his or her morals, violates a statute that sets forth a duty owed directly to the plaintiff, or breaches a medical duty of care to the patient exposing him or her to a traumatic experience involving plaintiff's own body.

David C. Cook et al., 14 N.Y. Prac., N.Y. Law of Torts, § 6.28 (Aug. 2019) (footnotes omitted). Plaintiff's allegations do not fall into any of these categories.

release which is not expected or to be tolerated in a civilized society." (Am. Compl. ¶ 159.) Plaintiff also alleges that while detained in the SHU, he was directed to remove all his clothes and ordered to "squat, raise his arms, and open his mouth," and then was "left naked . . . for [a] substantial period of time," in view of all officers who passed by the cell and causing Plaintiff "embarrassment[] and emotional trauma." (*Id.* ¶¶ 101–04.) In addition to "embarrassment[] and emotional trauma," Plaintiff alleges that, as a result of Defendants' actions, he experienced "mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and mental state." (*Id.* ¶ 162.) Plaintiff's conclusory allegations that he experienced mental suffering as a result of Defendants' actions are not sufficient to plausibly allege that he experienced severe emotional distress, as required under New York law. Accordingly, the Court dismisses Plaintiff's claim for intentional infliction of emotional distress for failure to state a claim.[11]

Plaintiff has also failed to plausibly allege a claim for negligent infliction of emotional distress. As discussed above, Plaintiff has not adequately alleged severe emotional distress as a result of Defendants' conduct. In addition, Plaintiff's conclusory allegations that he experienced "physical suffering, physical inconvenience, [and] physical discomfort" are not sufficient to allege that Defendants unreasonably endangered Plaintiff's physical safety or exposed him to an unreasonable risk of physical injury by detaining him in the SHU for three hours, requiring him to remove his clothes, and directing him to "squat, raise his arms, and open his mouth." While the Court is quite troubled by the Officer Defendants' conduct, and recognizes the trauma and affront to his dignity this may have caused Plaintiff, these allegations are not sufficient to allege

---

[11] Because the Court finds that Plaintiff has not plausibly alleged that he experienced severe emotional distress as a result of Defendants' conduct, the Court declines to address whether a claim for intentional infliction of emotional distress is cognizable under the FTCA or whether Plaintiff has plausibly alleged the remaining elements for such a claim under New York law.

a claim for negligent infliction of emotional distress under New York law, and the Court accordingly dismisses the claim.[12]

### iii.  Negligence claims

Plaintiff asserts negligence claims under the FTCA for Defendants' alleged failure (1) to "review readily available record[s] and make . . . [an] accurate calculation of [Plaintiff's] release date," (2) to "adequately train and supervise personnel handling sealed inmates' complaint[s] . . . and performing arrest, handcuffing and escorting to the SHU," and (3) to "properly secure [Plaintiff's] property pursuant to his arrest, handcuffing and transfer to the SHU."[13]  (Am. Compl. ¶ 176.)  Plaintiff also asserts negligence claims for the "[c]reati[on] and/or sanctioning" of discriminatory and retaliatory "policies, patterns, practices and customs."  (*Id.*)

Defendants argue that Plaintiff's claims that BOP "fail[ed] . . . to follow its own regulations . . . must be dismissed for lack of a private analog," and that Plaintiff's failure to train/supervise claims are "barred by the FTCA's discretionary function exception" and must be dismissed.  (Defs. Mot. 6.)

In response, Plaintiff argues that "New York law recognizes 'failure to act' negligence" claims," and that "[i]f the United States agents such as BOP were a private entity and had knowledge of a condition which it could eliminate and which would foreseeably cause harm to a specific individual, then its failure to avoid the harm by reasonable means would be actionable

---

[12]  The Court declines to address whether a claim for negligent infliction of emotional distress is cognizable under the FTCA.

[13]  Plaintiff also alleges that Defendants failed to "afford [him] due process rights."  (Am. Compl. ¶ 176.)  To the extent Plaintiff asserts a claim pursuant to the FTCA based on Defendants having allegedly violated his constitutional rights under the Due Process Clause of the Fifth Amendment, such a claim lacks a private analogue because the Due Process Clause governs state actions.  *See Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) ("The FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution.").

negligence." (Pl. Opp'n 4.) Plaintiff further argues that the discretionary function exception does not apply to his claims. (*Id.* at 7.)

### 1. Failure to accurately calculate release date

Plaintiff's claim that Defendants failed to accurately calculate his release date, resulting in the alleged fourteen-day delay in his release, is time-barred for the same reasons his false imprisonment claim in connection with the alleged delay is time-barred, as discussed above. In addition, Plaintiff's claim lacks a private analogue. While Plaintiff characterizes his claim as a failure-to-act negligence claim, Plaintiff alleges that Defendants failed to follow federal law and regulations, as well as BOP policy statements, governing BOP's calculation of a federal inmate's release date. (*See* Am. Compl. ¶¶ 49–61.)

"The FTCA's 'law of the place' requirement is not satisfied by direct violations of . . . federal statutes or regulations standing alone . . . . [T]he alleged federal violations also must constitute violations of duties 'analogous to those imposed under local law.'" *Chen*, 854 F.2d at 626 (quoting *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 100 (3d Cir. 1986)). The Second Circuit has found that there is no private analogue under the FTCA for a negligence claim alleging that "BOP negligently failed to follow its own disciplinary regulations." *McGowan*, 825 F.3d at 127. In *McGowan*, the Second Circuit rejected the plaintiff's argument that "the relevant private analogue [was] a private party's failure to follow its own internal regulations," finding that "[e]ven if that situation were analogous to the one presented here . . . [the plaintiff] ha[d] failed to establish that New York law recognizes a freestanding duty to abide by private regulations." *Id.* The Court finds that Plaintiff's claim that Defendants failed to follow federal law and regulation and internal agency policy governing the calculation of federal inmates' release dates lacks a private analogue as required by the FTCA and accordingly dismisses the

claim for lack of subject matter jurisdiction.

## 2. Failure to train/failure to supervise claims

The Court lacks subject matter jurisdiction over Plaintiff's claims alleging that BOP was negligent in training and supervising its employees, as well as creating or sanctioning certain policies, because they are barred by the discretionary function exception to the FTCA.

The FTCA's waiver of sovereign immunity does not apply to "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government." 28 U.S.C. § 2680(a). "The [discretionary function exception] bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Coulthurst v. United States*, 214 F.3d 106, 109 (2d. Cir. 2000)). "'The very existence of [a] regulation [permitting employee discretion] creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation' and 'it must be presumed that the agent's acts are grounded in policy when the agent exercises that discretion.'" *Needham v. United States*, No. 17-CV-05944, 2018 WL 3611944, at *3 (S.D.N.Y. July 27, 2018) (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).

Courts in this circuit have found that hiring, training, supervision, and other personnel decisions are discretionary. *See, e.g.*, *Needham*, 2018 WL 3611944, at *4 (finding "persuasive the authority relied upon by the Government that actions such as screening, hiring, and training

are generally discretionary in nature"); *Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 438 (S.D.N.Y. 2017) ("[C]ourts frequently find that 'issues of employee hiring, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception.'" (alteration, citation, and internal quotation marks omitted)); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) ("[F]ederal courts have found that . . . hiring, training, and supervision decisions generally fall within the exception."); *Li v. Aponte*, No. 05-CV-6237, 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) ("Personnel decisions of the United States generally fall within the discretionary function exception to the FTCA."). While federal law requires that BOP "have charge of the management and regulation of all Federal penal and correctional institutions," 18 U.S.C. § 4042(a)(1), section 4042 does not set forth any more particular directives for how BOP should hire, train, and supervise its personnel. *See Needham*, 2018 WL 3611944, at *4 (describing section 4042's "breadth and generality" and finding that the statute "does not dictate how the BOP should achieve [its] goals or how it should screen, hire, or train its staff"); *Enigwe v. Zenk*, No. 03-CV-854, 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) ("[I]n general decisions regarding the best way to safeguard prisoners are discretionary in nature."); *Paulino-Duarte v. United States*, No. 02-CV-9499, 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) (finding that section 4042(a) "merely outlines the general responsibilities of the BOP and leaves the BOP with the 'judgment or choice' in determining the proper course to fulfill these objectives").

Because these claims are barred by the discretionary function exception, the Court dismisses them for lack of subject matter jurisdiction.

### 3. Property claim

Pursuant to section 2680(c) of the FTCA, "the waiver of sovereign immunity does not apply to claims arising from the detention of property by 'any officers of customs or excise or any other law enforcement officer.'" *Ali*, 552 U.S. at 215–16 (quoting 28 U.S.C. § 2680(c)). The Supreme Court has held that this exception to the FTCA's waiver of sovereign immunity applies to property claims against BOP officers. *Id.*; *see also Adeyoka v. Fed. Bureau of Prisons*, 381 F. App'x 35, 37 (2d Cir. 2010) (finding "no subject matter jurisdiction for relief under the FTCA" where plaintiff "sought recovery for personal property that was allegedly damaged or went missing while being held in custody of correctional officers.") Accordingly, the Court dismisses Plaintiff's negligence claim for Defendants' alleged failure to secure his property for lack of subject matter jurisdiction.

### e. Leave to amend

"A *pro se* complaint 'should not be dismissed without the [c]ourt's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (alterations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). While "court[s] should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]eave to amend may be properly denied if the amendment would be 'futile,'" *Grullon*, 720 F.3d at 140 (alteration omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (citing *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

The Court declines to grant Plaintiff leave to file a second amended complaint. Although Plaintiff is *pro se*, Plaintiff has already had an opportunity to amend his claims and the Court finds that any amendment would be futile. Accordingly, the Court declines to grant Plaintiff leave to file a second amended complaint.

## IV. Conclusion

For the reasons set forth above, the Court adopts the R&R in its entirety, grants Defendants' motion to dismiss, and dismisses the Amended Complaint. The Clerk of Court is directed to close the case.

Dated: February 19, 2020
      Brooklyn, New York

SO ORDERED:

                                              _____s/ MKB_____
                                              MARGO K. BRODIE
                                              United States District Judge